Christopher W. Healy (CH 7221)
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Plaintiff National Union
Insurance Company of Pittsburgh, PA.
750 Lexington Avenue
New York, New York 10022
(212) 308-4411

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>    Plaintiff,<br><br>    -versus-<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, INC.<br><br>    Defendant. | **REQUEST TO ENTER DEFAULT**<br><br>07-CV-10502 (LBS) |

TO:   J. MICHAEL MCMAHON, CLERK
       UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK

Please enter the default of defendant Nationwide Mutual Insurance Company, Inc.,

pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and pursuant to Rule 55.1 of the

Civil Rules for the Southern and Eastern District of New York for failure to plead or otherwise

defend the above-captioned action as fully appears from the court file herein and from the

attached affidavit of Christopher W. Healy.

Dated:   New York, New York
        December 31, 2007

                      EDWARDS ANGELL PALMER & DODGE LLP

                      Christopher W. Healy (CH 7221)
                      Attorneys for National Union Fire Insurance
                      Company of Pittsburgh, PA.
                      750 Lexington Avenue
                      New York, New York 10022
                      (212) 308-4411

Christopher W. Healy (CH 7221)
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Plaintiff National Union
Insurance Company of Pittsburgh, PA.
750 Lexington Avenue
New York, New York 10022
(212) 308-4411

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | **AFFIDAVIT OF CHRISTOPHER W. HEALY FOR CERTIFICATE OF DEFAULT** |
| Plaintiff, | |
| -versus- | 07-CV-10502 (LBS) |
| NATIONWIDE MUTUAL INSURANCE COMPANY, INC. | |
| Defendant. | |

STATE OF NEW YORK      )
                                              )      ss.:
COUNTY OF NEW YORK   )

    **CHRISTOPHER W. HEALY**, being duly sworn, deposes and says:

    1.    I am admitted to the Bar of this Court and a member to the firm of Edwards Angell Palmer & Dodge, LLP, attorneys for plaintiff in the above-entitled action.

    2.    I am familiar with all the facts and circumstances in this action.

    3.    I make this affidavit pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and pursuant to Rule 55.1 of the Civil Rules for the Southern and Eastern Districts of New York in support of plaintiff's application for the a Certificate of Default against defendant, Nationwide Mutual Insurance Company, Inc.

    4.    Defendant is not an infant, in the military, or an incompetent person.

5.    The complaint was properly served on November 30, 2007 pursuant to Rule 4(h) of the Federal Rules of Civil Procedure, through personal delivery upon the New York State Department of Insurance, the registered agent of service for the defendant.  (Annexed hereto as Exhibits A and B are true and correct copies of the Summons with Affidavit of Service and Complaint.)

6.    Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, Defendant was required to answer or move against the complaint by December 20, 2007 at the latest.

7.    Defendant has failed to plead or otherwise defend the action.

WHEREFORE, plaintiff requests a Certificate of Default against defendant.

_____
Christopher W. Healy (CH 7221)

Sworn to before me this _31st_
day of December, 2007

_____
Notary Public

GERALDINE BIONDOLILLO
Notary Public, State of New York
No. 41-4720043
Qualified in Queens County
Commission Expires July 31, 2009

Exhibit A

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

### SOUTHERN DISTRICT OF NEW YORK

National Union Fire Insurance Company of
Pittsburgh, PA

*JUDGE SAND*

**SUMMONS IN A CIVIL CASE**

**V.**

CASE NUMBER:

Nationwide Mutual Insurance Company

**07 CV 10502**

TO: (Name and address of defendant)
Nationwide Mutual Insurance Company
One Nationwide Plaza
Columbus, OH 43215-2220

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher W. Healy, Esq.
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, NY 10022

an answer to the complaint which is herewith served upon you, within _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

J. MICHAEL McMAHON

NOV 21 2007

CLERK

DATE

(BY) DEPUTY CLERK

American LegalNet, Inc.
www.FormsWorkflow.com

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant. Place where served: _____
_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐  Returned unexecuted: _____
_____
_____
_____

☐  Other (specify): _____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing
information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____         _____
                        Date                                     Signature of Server

                                              _____
                                                  Address of Server

(1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

                              Plaintiff,

        – against –                                          07cv 10502

                                                             **AFFIDAVIT OF SERVICE**

NATIONWIDE MUTUAL INSURANCE
COMPANY, INC.

                              Defendant.

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK )

        GLENN M. HUZINEC, being duly sworn, deposes and says:

        (1)      I am over the age of eighteen years and am not a party to this action.  On the 30th

day of November, 2007, I served a true copy of the Summons, Complaint, Rule 7.1 Statement,

Individual Rule for both Judge Sand and Magistrate Judge Gorenstein, and the ECF Rules for the

United States District Court for the Southern District of New York upon:

                Nationwide Mutual Insurance Company
                One Nationwide Plaza
                Columbus, OH  43215-2220

by personally delivering a true copies of the above mentioned documents to The New York State

Department of Insurance, the Registered Agent of Service, located at 25 Beaver Street, NY, NY

10004 and leaving it with Keiko Omori, whose title is Paralegal, and who acknowledged to me

that she was authorized to accept service for the NY State Department of Insurance on behalf of

Nationwide Mutual Insurance Company.

(2)   Ms. Omori is described as an Asian female; approximately 50 years of age; approximately 5'4" tall; weighing approximately 140 lbs.; with short graying hair, and wearing glasses.

GLENN M. HUZINEC

Sworn to before me this
30th day of November, 2007

Notary Public

JOHN FRANCAVILLO
Notary Public, State of New York
No. 24-4638118
Qualified in Kings County
Certificate Filed in Kings County
Commission Expires Oct. 31, 20__

## NEW YORK STATE INSURANCE DEPARTMENT

Nº 13333

DATE 11/30 200 7   CK# 508620

RECEIVED OF Edwards Angell Palmer etet

Forty _____ DOLLARS

National Union Fire Ins. Co. v
Nationwide Mutual Ins. Co.

$ 40.00        Rec'd Michelle Bingham
                    legal asst
            By: Charlene Norris

Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Christopher W. Healy (CH 7221)
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Plaintiff National Union Insurance Company of Pittsburgh, PA.
750 Lexington Avenue
New York, New York 10022
(212) 308-4411

**JUDGE SAND**

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

Plaintiff,

-versus-

NATIONWIDE MUTUAL INSURANCE
COMPANY, INC.

Defendant.

07 CV 10502

COMPLAINT

JURY TRIAL DEMANDED

NOV 2 1 2007

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,

PA. ("National Union" or "Plaintiff"), as subrogee of Park Terrace Gardens ("Park Terrace"), by

its attorneys, EDWARDS ANGELL PALMER & DODGE LLP, alleges upon information and

belief as follows:

### NATURE OF THIS ACTION

1. This is an action for bad faith, breach of contract, negligence, negligent

misrepresentation, and violation of New York General Business Law § 349.

2. By this action, National Union seeks a declaratory judgment under the Declaratory

Judgment Act, 28 U.S.C. § 2201, and money damages against Nationwide Mutual Insurance

Company, Inc. ("Nationwide") for its unfair and deceptive settlement practices and breach of its

duties and obligations under its commercial general liability and umbrella insurance policies, including two policies issued to named insured Plaza Restoration, Inc. ("Plaza").

**PARTIES**

3.  Plaintiff National Union is a corporation organized under the laws of the State of Pennsylvania.

4.  Nationwide is a corporation incorporated in the State of Ohio.

**JURISDICTION AND VENUE**

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  The parties to this action are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c).

**STATEMENT OF FACTS**

A.    **The Personal Injury Action**

7.    On or about October 8, 1998, Tadeusz Olszewski ("Mr. Olszewski"), an employee of Plaza, sustained injuries when a scaffold cable maintained by Plaza broke, causing him to fall several stories at a construction site established to perform the renovation work of a residential building located at 65-67 Park Terrace East in New York, New York (the "Site"). Plaza had been retained by the general contractor, DJM Contracting Corp. ("DJM"), as a masonry subcontractor at the Site and, at the time of the accident, owned and maintained the scaffolding.

8.    On or about January 21, 1999, Mr. Olszewski and his wife commenced an action against the owner of the Site, Park Terrace, the managing agent, Insignia Residential Group Inc. ("Insignia"), and DJM (collectively referred to herein as the "Defendants/Third-Party Plaintiffs")

- 2 -

entitled Olszewski v. Park Terrace Gardens, Inc., Index No. 101783/99, in New York State Supreme Court, County of New York (the "Personal Injury Action"). The Personal Injury Action sought damages for alleged violations of New York Labor Law §§ 200, 240 and 241 and loss of consortium as a result of the scaffolding accident.

9.    At the time of Mr. Olszewski's accident, Park Terrace was insured under a primary commercial general liability policy issued by St. Paul Fire & Marine Insurance Company ("St. Paul") and an umbrella commercial general liability policy issued by the plaintiff, National Union. Insignia was an additional insured under the St. Paul and National Union policies. DJM was insured under primary and excess commercial general liability policies issued by Reliance National Indemnity Company ("Reliance") and Plaza was insured under primary and umbrella commercial general liability policies and an employer's liability policy issued by the defendant, Nationwide.

10.    Pursuant to the terms of the contract entered into by Park Terrace and DJM, DJM was to hold harmless and indemnify Park Terrace and Insignia from any liability for any personal injuries arising out of the work being performed under the contract and procure liability insurance for the benefit of Park Terrace and Insignia to protect them from any claims for damages arising out of the work.[1] Park Terrace and Insignia were added as additional insureds to DJM's primary Reliance policy by endorsement. The Reliance excess liability policy issued to DJM followed form to the primary policy.

11.    After Plaintiffs commenced suit against Park Terrace, Insignia and DJM, Park Terrace and Insignia tendered their defense and indemnification to their primary insurer, St. Paul. St. Paul, acting on behalf of Park Terrace and Insignia, tendered their defense and

---

[1] See Articles 9.12 and 17.1 to Exhibit ("Ex.") A attached hereto.

indemnification to DJM's insurer, Reliance. Reliance undertook to defend Park Terrace and Insignia under a reservation of rights with respect to co-insurance.

12.    Despite St. Paul's insistence, Reliance refused to withdraw its reservation of rights. Furthermore, defense counsel retained by Reliance for co-defendants DJM, Park Terrace and Insignia was precluded from filing cross-claims against DJM on behalf of Park Terrace and Insignia due to the conflict of interest. Thus, St. Paul was forced to protect its insureds' rights and in April 2001 hired separate defense counsel to represent them, including bringing cross-claims against co-defendant DJM in the Personal Injury Action.

**B.    The Third-Party Action**

13.    On or about October 13, 1999, the Defendants/Third-Party Plaintiffs commenced a third-party action against Plaza in the Supreme Court, County of New York entitled Park Terrace Gardens, Inc., v. Plaza Restoration, Inc., Index No. 101783/99, asserting claims for contractual indemnification, common law indemnification and contribution for liability arising out of the Personal Injury Action (the "Third-Party Action"). A copy of the complaint from the Third-Party Action is attached hereto as Ex. B.

14.    The contractual indemnification claims asserted by the Defendants/Third-Party Plaintiffs stem from a subcontract agreement Plaza entered into with DJM on or about March 30, 1998 for Plaza's work at the Site (the "Subcontract").[2] Pursuant to the terms of the Subcontract, Plaza agreed to indemnify and hold harmless the owner (Park Terrace), general contractor (DJM) and managing agent (Insignia) from and against claims and damages arising out of or resulting from the performance of Plaza's work.[3] Plaza also agreed to provide liability insurance for the benefit of DJM, Park Terrace and Insignia. Plaza's insurance procurement obligations were set

---

[2] Attached hereto as Ex. C.
[3] Id. at Article 4.6.

forth in the Project Manual for Restoration Work at Buildings "E" and "C" prepared for Park

Terrace by Eugenia Masucci, R.A. dated August 25, 1997 (the "Specifications").[4]  With respect

to the insurance called for in the Specifications, the Specifications provide:

> 21.3.5    The insurance required is as specified below and in the amounts indicated:
>
> A. Workers' Compensation and Employer's Liability Insurance (statutory); amounts and coverage as required by New York State law.
>
> B. Comprehensive General Liability Insurance: policy liability, including premises, products, completed operations and contractual in the amounts stated below:
>
> 1. Bodily Injury (Public) Liability - $5,000,000.
>
> 2. Property Damage Liability, $5,000,000.
>
>                    . . .
>
> 21.3.8    The Owner, Owner's directors, officers, agents and employees and Architect shall be named as "additional insured" on all policies.

**C.    The Insurance Policies**

15.    St. Paul, National Union, Reliance and Nationwide issued various liability

insurance policies that provide various coverages for liability resulting from the Personal Injury

and Third-Party Actions.

16.    St. Paul issued primary liability policy number CK 06502995 to Parks Real Estate

Purchasing Group, Inc. for the policy period January 15, 1998 – January 15, 1999, with limits of

$1 million per occurrence and $2 million in the aggregate (the "St. Paul Policy").

17.    National Union issued excess liability policy number BE3573023 to Parks Real

Estate Purchasing Group, Inc. for the policy period January 15, 1998 – January 15, 1999, with

---

[4] See Ex. A.

limits of $25 million per occurrence excess of the $1 million St. Paul policy (the "National Union Policy").[5]

18.    Reliance issued primary liability policy number NGI 0140627-01 to DJM Contracting Corp. for the policy period September 4, 1998 – September 4, 1999, with limits of $2 million per occurrence and in the aggregate (the "Reliance Primary Policy").

19.    Reliance also issued excess liability policy number NEA 0140629-01 to DJM Contracting Corp. for the policy period September 4, 1998 – September 4, 1999, with limits of $5 million per occurrence and in the aggregate (the "Reliance Excess Policy").

20.    Nationwide issued policy no. 66 AC 381-936-3001 to Plaza for the policy period March 15, 1998 – March 15, 1999 (the "Nationwide Primary Policy").[6]  The Nationwide Primary Policy provides commercial general liability coverage with limits of liability of $2,000,000 per occurrence and in the aggregate.

21.    Nationwide also issued commercial umbrella liability insurance policy no. 66 MU 381-936-3003 L to Plaza for the policy period March 15, 1998 – March 15, 1999 with limits of liability of $2,000,000 per Occurrence and in the aggregate (the "Nationwide Umbrella Policy").[7]

22.    According to the terms of the Nationwide Primary Policy, Nationwide is obligated to indemnify Plaza for all prejudgment interest on that part of the judgment Nationwide pays, from the time interest begins to accrue until such time as Nationwide makes an unconditional offer to pay.

---

[5] Attached hereto as Ex. D.  The named insured under the National Union Policy included "Parks Real Estate Purchasing Group, Inc. and/or any subsidiary company (or subsidiaries of divisions thereof) and/or any other affiliated, allied or controlled entity or joint venture of any of the foregoing that existed or may hereafter exist." See Endorsement # 2. Park Terrace qualifies as a named insured under the National Union Policy.
[6] Attached hereto as Ex. E.
[7] Attached hereto as Ex. F.

23.    Nationwide also issued workers' compensation and employer's liability insurance policy no. 66 WC 381-936-3002 L to Plaza for the policy period March 15, 1998 – March 15, 1999 (the "Nationwide Employers Liability Policy").[8]    The Nationwide Employers Liability Policy provides unlimited coverage in the event Plaza is found liable to a third party for common law indemnification for injuries sustained by an employee acting within the scope of his or her employment.[9]

**D.    Nationwide's Defense and Indemnification Obligations**

24.    In exchange for the premiums paid by Plaza, Nationwide agreed, *inter alia,* to defend Plaza in suits seeking damages covered by the Nationwide Policies. Nationwide also agreed to provide additional insured coverage, including provision of a defense, under the Nationwide Umbrella Policy to any entity to whom Plaza agreed in writing to provide insurance such as that provided by the Nationwide Umbrella Policy.    Nationwide also agreed to pay on behalf of its insureds and additional insureds any judgment covered by the Nationwide Primary and/or Umbrella Policies up to the limits of each Policy and without limit for claims falling under the unlimited coverage provisions of the Nationwide Employers Liability Policy.

25.    Plaza tendered its defense of the Third-Party Action to Nationwide, which Nationwide accepted without a reservation of rights.

26.    Nationwide controlled the defense of Plaza in the Third-Party Action and retained the law firm of Gallagher Walker Bianco and Plastaras, LLP ("Gallagher Walker") to defend Plaza.

27.    Park Terrace and Insignia tendered the defense of the Personal Injury Action to Nationwide, but Nationwide refused to defend and indemnify them.

---

[8] Attached hereto as Ex. G.
[9] See id., New York Limit of Liability Endorsement.

28.    Park Terrace, Insignia and DJM are insureds under the Nationwide Umbrella Policy. Pursuant to the terms of the Nationwide Umbrella Policy, Nationwide owes the Defendants/Third-Party Plaintiffs a duty to defend after the exhaustion of a ten thousand dollar ($10,000.00) retained limit. Payments of defense costs and expenses on behalf of insureds are outside the limit of liability of the Nationwide Umbrella Policy.

**E.    Nationwide's Failure to Disclose the Existence of Its Umbrella Coverage**

29.    On three occasions shortly after the Third-Party Action was filed, the court ordered Plaza to disclose the total amount of liability insurance coverage available to it.[10]

30.    On all three occasions, Plaza was unable to disclose information relating to or produce a copy of the Nationwide Umbrella Policy due to Nationwide's failure to accurately account for Plaza's applicable liability insurance coverage.

31.    In the face of multiple court orders, Nationwide wrongfully failed to provide Plaza with the total amount of liability insurance coverage available, to properly and adequately search its records and to ascertain and identify the existence of the Nationwide Umbrella Policy.

32.    On October 5, 2000, Gallagher Walker submitted an affidavit in the Third-Party Action, sworn to by Michael Stoop, Plaza Restoration's local Nationwide insurance agent.[11] Despite the fact that he had procured all three Nationwide Policies for Plaza, Mr. Stoop stated that he was "fully familiar with the insurance coverages applicable to Plaza Restoration, Inc." and that "there were no excess insurance policies and no umbrella policies for Plaza Restoration, Inc. from the Nationwide Mutual Insurance Company" during the period in question. Faced with responding to the above-referenced orders, Plaza at all times relied upon the accuracy and veracity of Mr. Stoop's sworn statement, as an agent of Nationwide.

---

[10] Attached hereto as Exs. H - J.
[11] Attached hereto as Ex. K.

F.    **Judgments Rendered in the Personal Injury and Third-Party Actions**

33.    On or about June 29, 2001, the Hon. Marilyn Shafer, Acting Justice of the Supreme Court, State of New York, County of New York, granted summary judgment on liability in the Personal Injury Action in favor of Mr. Olszewski against the Defendants/Third-Party Plaintiffs pursuant to Labor Law § 240(1), which imposes strict liability on contractors and building owners when a worker is injured, regardless of lack of control or supervision.

34.    In the Third-Party Action, Justice Shafer unconditionally granted summary judgment in favor of the Defendants/Third-Party Plaintiffs on their contractual indemnification claims against Plaza, thereby establishing Plaza's liability for all damages to the Third-Party Plaintiffs resulting from the scaffolding accident.[12]

35.    In or about December 2002, a trial was held on damages in the Personal Injury Action before the Honorable Nicholas Figueroa. At the conclusion of the trial, a verdict was entered against the Defendants/Third-Party Plaintiffs in excess of ten million dollars.

36.    On June 17, 2003, the Appellate Division, First Department, *inter alia*, upheld the unconditional grant of summary judgment to the Defendants/Third-Party Plaintiffs on their contractual indemnification claims against Plaza.[13]

37.    By reason of the judgment already issued against Plaza on the contractual indemnification claims in the Third-Party Action and the fact that Plaza was solely negligent for Mr. Olszewski's accident[14], the verdict exposed Plaza to liability in excess of its available insurance coverage.

---

[12] Attached hereto as Ex. L.
[13] Attached hereto as Ex. N.
[14] See Ex. M attached hereto at p. 12.

G.    **Nationwide's Bad Faith Settlement Practices**

38.    In light of the already adjudicated contractual liability of its named insured Plaza, Nationwide should have been highly motivated to pursue settlement prior to the December 2002 trial on damages.

39.    In fact, Nationwide had numerous opportunities to contribute to a settlement of the Personal Injury and Third-Party Actions before the December 2002 verdict was entered against the Defendants/Third-Party Plaintiffs, but each time steadfastly refused to do so.

40.    After the June 29, 2001 entry of judgment of contractual liability against Plaza, counsel for the Defendants/Third-Party Plaintiffs repeatedly asked Gallagher Walker if Nationwide would participate in settlement negotiations or offer any proceeds on behalf of Plaza in an attempt to resolve the claims brought by the Plaintiffs. Each time, counsel for the Defendants/Third-Party Plaintiffs were rebuffed by Gallagher Walker.

41.    Nationwide refused to extend settlement authority to Gallagher Walker and took the position that the Defendants/Third-Party Plaintiffs should settle the Personal Injury Action and subsequently seek reimbursement from Nationwide.

42.    Not once prior to the December 2002 trial on damages in the Personal Injury Action did Nationwide make an offer of settlement on behalf of Plaza and at no time did Nationwide make an offer of settlement on behalf of DJM, Park Terrace and Insignia, its additional insureds.

43.    Nationwide's repeated refusal to make or even entertain an offer of settlement sabotaged Plaza's and the Defendants/Third-Party Plaintiffs' ability to timely and economically resolve the Personal Injury Action.

44.     As a result of Nationwide's bad faith refusal to settle, the Personal Injury Action proceeded to a trial on damages in December 2002, resulting in a verdict in favor of the Plaintiffs in excess of $10 million.

45.     Following the trial on damages and the damage award in favor of the Plaintiffs, St. Paul tendered the limits of the St. Paul Policy and its defense of Park Terrace and Insignia to National Union. At this time, the Defendants/Third-Party Plaintiffs again attempted to negotiate a settlement with the Plaintiffs. Despite the Plaintiffs' willingness to discuss settlement, Gallagher Walker repeatedly maintained that Nationwide had the issue of any contribution from the Nationwide Policies "under review."

46.     At a status conference before the trial court on July 18, 2003, the court requested that the parties to the Third-Party Action convene for a settlement conference prior to the September 8, 2003 hearing on the issue of whether Mr. Olszewski suffered a grave injury, which would impact (i) the Third-Party Plaintiffs' entitlement to common law indemnification and (ii) Nationwide's obligation to fully indemnify Plaza, under the Nationwide Employers Liability Policy, for its common law indemnification liability to the Third-Party Plaintiffs. Despite this request by the court, Nationwide refused to alter its "no pay" position.

47.     Nationwide's refusal to enter into settlement discussions at this time was further indefensible given the fact that on June 17, 2003, the Appellate Division, First Department (i) affirmed the trial court's unconditional grant of summary judgment to the Defendants/Third-Party Plaintiffs on their contractual indemnification claims against Plaza, and (ii) reinstated the Defendants/Third-Party Plaintiffs' common law indemnification claims against Plaza, which had been dismissed on summary judgment.[15]

---

[15] See Ex. N.

48.    On or about October 1, 2003, more than nine months after the trial on damages in the Personal Injury Action, Gallagher Walker sent the other parties to the Personal Injury and Third-Party Actions a letter stating, "We have just been advised that there was a Commercial Umbrella policy issued by the Nationwide Mutual Insurance Company ... in effect at the time of the accident of October 8, 1998. This policy affords additional coverage to our client, Plaza Restoration, Inc., in the amount of $2,000,000."[16]

49.    After the Nationwide Umbrella Policy came to light late in 2003, Gallagher Walker again submitted an affidavit sworn to by Mr. Stoop.[17] Mr. Stoop stated that in October 2000 he had only searched the computer files of Nationwide to which he had access, rather than paper files, because the paper files had "limited accessibility." Mr. Stoop's affidavit does not indicate why the paper files had "limited accessibility," whether these paper files were those maintained by Nationwide, whether Mr. Stoop maintained his own paper files, and if not, why he did not and whether his failure to maintain paper files contravened Nationwide's policies and procedures at the time.

50.    As a result of Nationwide's failure to discover and report the existence of the Nationwide Umbrella Policy, Plaza and the Defendants/Third-Party Plaintiffs were significantly hampered and prejudiced in their ability to resolve the Personal Injury Action prior to the trial on damages in December 2002. Had the parties known that the coverage available to Plaza was twice the amount that Nationwide originally reported, they would have been able to resolve the Personal Injury Action for less than the $10 million judgment at trial. The Defendants/Third-Party Plaintiffs also incurred costs in defending the Personal Injury Action that rightfully should have been covered by the Nationwide Umbrella Policy.

---

[16] Attached hereto as Ex. O.
[17] Attached hereto as Ex. P.

51.     Finally, in December 2003, two months after it "discovered" the existence of the Nationwide Umbrella Policy, Nationwide offered to tender the limits of the Nationwide Primary and Umbrella Policies to plaintiff National Union towards settlement of the Personal Injury Action.[18]   Nationwide's offer to tender its limits, however, was made before Nationwide had even provided Defendants/Third-Party Plaintiffs with a copy of the Nationwide Umbrella Policy. Furthermore, Nationwide's offer to tender its limits was made only on behalf of Plaza, despite the Defendants/Third-Party Plaintiffs' status as additional insureds under the Nationwide Umbrella Policy and their entitlement to indemnification thereunder for Plaintiffs' claims. Nationwide's offer was also conditioned on the Defendants/Third-Party Plaintiffs' agreement to abandon their common law indemnification claims against Plaza.  Nationwide's conditional offer was immediately rejected by the Defendants/Third-Party Plaintiffs.

52.     It was not until on or about January 23, 2004, over four years after the commencement of the Third-Party Action, that Nationwide unconditionally tendered the $4 million combined limits of the Nationwide Primary and Umbrella Policies to plaintiff National Union on behalf of Plaza, plus interest on the judgment in the amount of $889,644.00, an amount plaintiff disputes as insufficient.[19]

53.     In or about June 2004, by which time interest on the judgment totaled more than $2.5 million, the Defendants/Third-Party Plaintiffs negotiated a full and final settlement with the Plaintiffs in the amount of $10 million.

54.     Nationwide contributed $4,889,644.00 to the settlement on behalf of Plaza. Nationwide's contribution on behalf of Plaza represented the $4,000,000.00 combined limits of the Nationwide Primary and Umbrella Policies, as well as interest on the $4,000,000.00 from the

---

[18] Attached hereto as Ex. Q.
[19] Attached hereto as Ex. R.

date of summary judgment (June 29, 2001) to the date of Nationwide's conditional tender of the limits of the Nationwide Primary and Umbrella Policies (December 18, 2003).

55.    Nationwide refused to pay more than $889,644.00 in interest, despite the Defendants/Third-Party Plaintiffs' assertion that the language of the Nationwide Primary and Umbrella Policies with respect to prejudgment interest did not support Nationwide's position.

56.    The Liquidation Bureau of the New York State Department of Insurance, as the liquidator of Reliance, contributed $1,871,715.00 to the settlement on behalf of DJM.

57.    National Union contributed $3,238,641.00 to the settlement on behalf of Park Terrace, including the $1,000,000.00 limits of the St. Paul Policy, which St. Paul had tendered to National Union on December 30, 2002.

58.    DJM, Reliance and the Liquidation Bureau assigned their rights against Nationwide to Park Terrace, including the right to recover the settlement amounts paid and to pursue claims for bad faith and breach of duty.[20]  Plaintiff National Union, Park Terrace's insurer, is subrogated to those rights by virtue of the indemnity payments made on Park Terrace's behalf in settlement of the Personal Injury Action and by virtue of National Union's position as subrogee of Park Terrace.

59.    In or about October 2004, Plaza assigned its common law and contractual rights under the Nationwide Primary and Umbrella Policies against Nationwide to Park Terrace.[21] Plaintiff National Union, Park Terrace's insurer, is subrogated to those rights by virtue of the indemnity payments made on Park Terrace's behalf in settlement of the Personal Injury Action and by virtue of National Union's position as subrogee of Park Terrace.

---

[20] See pp. 6-7, 17-18 of Ex. S attached hereto.
[21] See Ex. T attached hereto.

H.    **Nationwide's Bad Faith Litigation Practices**

60.    The Defendants/Third-Party Plaintiffs asserted common law indemnification claims against Plaza in the Third-Party Action. On June 29, 2001, the trial court granted Plaza's motion to dismiss the common law indemnification claims.

61.    In or about June 2003, the Appellate Division, First Department affirmed the judgments in favor of Mr. Olszewski against the Defendants/Third-Party Plaintiffs and in favor of the Defendants/Third-Party Plaintiffs against Plaza. The judgment dismissing the common law indemnification and apportionment claims was reversed, and those claims were reinstated against Plaza.

62.    In or about August 2003, Gallagher Walker, at the direction of Nationwide and purportedly on Plaza's behalf, again moved for summary judgment on the common law indemnification claims.

63.    On or about January 6, 2004, the Supreme Court again granted Plaza's motion for summary judgment, dismissing the common law indemnification claims.

64.    On or about May 24, 2005, the First Department again subsequently reinstated the common law indemnification claims against Plaza.

65.    On or about January 30, 2006, Gallagher Walker, at the direction of Nationwide and purportedly on Plaza's behalf, for a *third* time moved for summary judgment on the common law indemnification claims.

66.    The common law indemnification claims were finally determined in the Defendants/Third-Party Plaintiffs' favor against Plaza in a decision dated December 19, 2006.[22]

67.    Nationwide, through Gallagher Walker, has continued to pursue dismissal of the Defendants/Third-Party Plaintiffs' common law indemnification claims against Plaza, despite the

---

[22] See Ex. M.

fact that (i) the limits of insurance available to Plaza under the Employers Liability Policy for those claims are unlimited and therefore available to satisfy any potential judgment against Plaza, (ii) Plaza's contractual liability to the Defendants/Third-Party Plaintiffs has been established since June 29, 2001 and (iii) Plaza's contractual liability to the Defendants/Third-Party Plaintiffs was likely to exceed the coverage limits of the Nationwide Primary and Umbrella Policies. By instructing Gallagher Walker to repeatedly move for dismissal of common law indemnification claims pending against Plaza for which the Nationwide Employers Liability Policy provides full coverage, Nationwide created a conflict of interest with its insured, Plaza, which Nationwide has made no effort to resolve.

68.    Nationwide's actions in repeatedly pursuing dismissal of the common law indemnification claims in light of Plaza's already determined contractual liability is motivated by Nationwide's placement of its own interests ahead of the interests of its insured, Plaza.

69.    Nationwide did not advise Plaza that, due to the conflict of interest created by Nationwide in attempting to obtain dismissal of the common law indemnification claims, for which the Nationwide Employers Liability Policy provides unlimited coverage, Plaza was entitled to retain independent counsel, at Nationwide's expense, with respect to this potential uninsured liability.

70.    Nationwide's failure to advise Plaza of this right and/or to retain independent counsel for Plaza breached Nationwide's contractual duty of good faith and fair dealing and contractual duty to defend Plaza under the Nationwide Primary and Umbrella Policies.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of New York General Business Law § 349)

71.     Plaintiff incorporates and restates each and every allegation contained in paragraphs 1 through 70 of this Complaint.

72.     Nationwide has engaged in deceptive acts and practices in its dealings with Plaza, the Defendants/Third-Party Plaintiffs and, upon information and belief, its other insureds, by failing to design and implement adequate or reasonable policies and procedures with respect to:

(a)     the investigation of the existence of excess or umbrella liability coverage available to its insureds;

(b)     participation in settlement discussions relating to threatened or ongoing litigation against its insureds;

(c)     the tender of its insureds' policy limits to claimants in cases where the insureds' liability to such claimants has been established with reasonable certainty;

(d)  ·  advising its insureds of the right to retain independent counsel at Nationwide's expense where Nationwide's actions and/or incentives create a conflict of interest between Nationwide and its insureds;

(e)     retaining independent counsel for its insureds with respect to potentially uninsured liability where Nationwide's actions and/or incentives create a conflict of interest between Nationwide and its insureds; and

(f)     making conditional tender offers that prevent its insureds from benefiting from all of the liability insurance coverage for which they have paid premiums.

73.     As a result of Nationwide's deceptive acts and practices, Nationwide's insureds, including the Defendants/Third-Party Plaintiffs and Plaza, have been exposed to unnecessary litigation, expense and uninsured liability.

74.    Upon information and belief, Nationwide's gratuitous, self-serving conduct evidences a pattern and practice of deceptive and unfair settlement practices to the detriment of its insureds. By reason of this conduct, plaintiff is entitled to an award in an amount to be determined by the trier of fact and for its actual damages, as well as reasonable attorneys' fees in an amount to be determined by the Court.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Bad Faith)

75.    Plaintiff incorporates and restates each and every allegation contained in paragraphs 1 through 74 of this Complaint.

76.    Nationwide owed contractual and implied duties of good faith and fair dealing to Plaza, the Defendants/Third-Party Plaintiffs and National Union with respect to the performance of its obligations under the Nationwide Primary and Umbrella Policies arising from the Personal Injury and Third-Party Actions.

77.    Nationwide breached its contractual and implied duties of good faith and fair dealing by, among other things:

(a)    refusing in bad faith to engage in settlement discussions or make an offer of settlement within the limits of the Nationwide Primary and Umbrella Policies;

(b)    refusing in bad faith to tender the limits of the Nationwide Primary and Umbrella Policies until January 2004;

(c)    refusing in bad faith to tender the limits of the Nationwide Primary and Umbrella Policies unless the Defendants/Third-Party Plaintiffs dismissed their common law indemnification claims against Plaza, because Nationwide would be liable to indemnify the Defendants/Third-Party Plaintiffs and Plaza for the full amount of the

verdict if the Defendants/Third-Party Plaintiffs prevailed on their common law indemnification claims;

   (d)  pursuing its own interests at the expense of Plaza's interests in repeatedly seeking dismissal of the common law indemnification claims, thereby creating a conflict of interest with Plaza which Nationwide has made no effort to resolve;

   (e)  failing to advise Plaza of its right to retain independent counsel, at Nationwide's expense, with respect to potentially uninsured liability in light of the conflict of interest created by Nationwide;

   (f)  failing to retain independent counsel to represent Plaza with respect to potentially uninsured liability in light of the conflict of interest created by Nationwide; and

   (g)  refusing to acknowledge the status of the Defendants/Third-Party Plaintiffs as additional insureds under the Nationwide Umbrella Policy and refusing to provide the defense and indemnification to which the Defendants/Third-Party Plaintiffs are entitled under the Nationwide Umbrella Policy.

78.  Nationwide's gross disregard of the interests of its insureds and National Union has unjustifiably and unreasonably exposed those parties to unnecessary litigation, expense and uninsured liability. By reason of this conduct, plaintiff is entitled to an award in an amount to be determined by the trier of fact and for its actual damages, as well as reasonable attorneys' fees in an amount to be determined by the Court.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

79.    Plaintiff incorporates and restates each and every allegation contained in paragraphs 1 through 78 of this Complaint.

80.    Nationwide issued the Nationwide Policies to Plaza.

81.    Plaza complied with all of its obligations under the Nationwide Policies.

82.    The Defendants/Third-Party Plaintiffs are insureds under the Nationwide Umbrella Policy.

83.    Nationwide owed contractual duties, including the duty of good faith and fair dealing, to Plaza and the Defendants/Third-Party Plaintiffs in managing the claims tendered by Plaza and the Defendants/Third-Party Plaintiffs under the Nationwide Primary and Umbrella Policies arising from the Personal Injury and Third-Party Actions.

84.    Nationwide breached its duties and obligations under the Nationwide Primary and Umbrella Policies by, among other things:

(a)    refusing and/or failing to participate in settlement discussions when Plaza's contractual liability was already determined;

(b)    refusing and/or failing to advise Plaza of its right to retain independent counsel, at Nationwide's expense, as a result of the conflict of interest created by Nationwide;

(c)    refusing and/or failing to retain independent counsel to represent Plaza with respect to potentially uninsured liability;

(d)    refusing and/or failing to pay the full amount of interest due on the December 2002 verdict towards the settlement; and

(e)     refusing and/or failing to pay all of the Defendants/Third-Party Plaintiffs' attorneys' fees and expenses incurred in defending the Personal Injury Action, pursuant to their status as additional insureds under the Nationwide Umbrella Policy.

85.     The Defendants/Third-Party Plaintiffs and Plaza have been damaged as a result of Nationwide's breach of its duties and obligations under the Nationwide Primary and Umbrella Policies. Nationwide's actions have exposed the Defendants/Third-Party Plaintiffs and Plaza to unnecessary litigation, expense and uninsured liability.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

86.     Plaintiff incorporates and restates each and every allegation contained in paragraphs 1 through 85 of this Complaint.

87.     Nationwide owed a duty of care to Plaza, the Defendants/Third-Party Plaintiffs and National Union in managing the claims tendered by Plaza and the Defendants/Third-Party Plaintiffs under the Nationwide Primary and Umbrella Policies arising from the Personal Injury and Third-Party Actions.

88.     Nationwide breached its duty of care by, among other things:

(a)     failing to timely disclose that Plaza and the Defendants/Third-Party Plaintiffs were insured by the Nationwide Umbrella Policy, with policy limits of $2 million; and

(b)     failing to make a reasonable search of its records and files to determine the existence of any umbrella or excess coverage available to Plaza and the Defendants/Third-Party Plaintiffs.

89.    Plaza, the Defendants/Third-Party Plaintiffs and National Union have been damaged as a result of Nationwide's breach of its duty of care. Nationwide's actions, patterns and practices have exposed Plaza, the Defendants/Third-Party Plaintiffs and National Union to unnecessary litigation, expense and uninsured liability.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

90.    Plaza incorporates and restates each and every allegation contained in paragraphs 1 through 89 of this Complaint.

91.    Nationwide owed a duty of care to Plaza, the Defendants/Third-Party Plaintiffs and National Union to provide correct information with respect to the Nationwide Primary and Umbrella Policies to the courts and the parties involved in the Personal Injury and Third-Party Actions.

92.    Nationwide breached its duty of care by representing, through a certificate of insurance issued April 17, 1998, that Plaza was only insured by the Nationwide Primary Policy and the Nationwide Employers Liability Policy at the time of Mr. Olszewski's accident.

93.    Nationwide also breached its duty of care by representing, through an affidavit sworn to by one of its agents on October 5, 2000, that Plaza was only insured by the Nationwide Primary Policy and the Nationwide Employers Liability Policy at the time of Mr. Olszewski's accident, and did not have any excess or umbrella coverage through Nationwide or any other insurance company.

94.    Had Nationwide made a reasonable search of its records and files to determine the liability coverage available to Plaza, it would have known that these representations were false and misleading.

95.    Nationwide knew that the amount of liability insurance coverage available to Plaza was critical to Plaza and the Defendants/Third-Party Plaintiffs' defense of and ability to settle the Personal Injury and Third-Party Actions.

96.    Plaza, the Defendants/Third-Party Plaintiffs and National Union relied on Nationwide's representations with respect to Plaza's liability insurance coverage to their detriment.

97.    Plaza, the Defendants/Third-Party Plaintiffs and National Union have been damaged as a result of Nationwide's negligent misrepresentations. Nationwide's actions have exposed Plaza, the Defendants/Third-Party Plaintiffs and National Union to unnecessary litigation, expense and uninsured liability.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Declaratory Relief Pursuant to CPLR § 3001)

98.    Plaintiff incorporates and restates each and every allegation contained in paragraphs 1 through 97 of this Complaint.

99.    An actual controversy has arisen and now exists between Nationwide, Plaza and the Defendants/Third-Party Plaintiffs.

100.    Plaintiff desires a judicial determination of the respective rights and duties of Nationwide with respect to the duty to defend and indemnify Plaza and the Defendants/Third-Party Plaintiffs.  In particular, Plaintiff desires a declaration that:

(a)    Plaza is entitled to independent counsel, at Nationwide's expense, to protect its interests in the Third-Party Action as a result of the conflict of interest created by Nationwide;

(b)    Park Terrace, Insignia and DJM are additional insureds under the Nationwide Umbrella Policy;

(c)    Nationwide had a duty to defend and indemnify the Defendants/Third-Party Plaintiffs in the Personal Injury Action; and

(d)    Nationwide should have paid prejudgment interest on the $4,000,000.00 it paid towards the settlement of the Personal Injury Action from June 29, 2001 until January 23, 2004, the date of its unconditional tender of the limits of the Nationwide Primary and Umbrella Policies.

101.    Such a declaration is necessary and appropriate at this time in order that Plaza and the Defendants/Third-Party Plaintiffs may ascertain their rights and duties with respect to Nationwide.

THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK

**WHEREFORE,** Plaintiff seeks judgment against Nationwide for: (i) compensatory damages for any and all amounts paid to the plaintiffs in the Personal Injury Action on behalf of the Defendants/Third-Party Plaintiffs; (ii) compensatory damages for any and all amounts incurred by Plaza in defense of the Third-Party Action; (iii) compensatory damages for any and all amounts incurred by the Defendants/Third-Party Plaintiffs in defense of the Personal Injury Action; (iv) on the First and Second Causes of Action, such punitive damages as Plaintiff shall prove at trial, together with interest; (v) a declaratory judgment as set forth above in paragraph 97; (vi) an award of attorneys fees and litigation expenses; (vii) all costs and disbursements of this action; and (viii) such other and further relief in favor of Plaintiff and against Nationwide that the Court deems just and proper.

EDWARDS ANGELL PALMER & DODGE LLP

Christopher W. Healy (CH 7221)
Attorneys for National Union Fire Insurance
Company of Pittsburgh, PA.
750 Lexington Avenue
New York, New York 10022
(212) 308-4411

Dated: November 20, 2007

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

          Plaintiff,

          -versus-

NATIONWIDE MUTUAL INSURANCE
COMPANY, INC.

          Defendant.

**CERTIFICATION OF
DEFAULT**

07-CV-10502 (LBS)

      I, J. MICHAEL MCMAHON, Clerk of Court of the United States District Court for the

Southern District of New York, do hereby certify that the defendant, Nationwide Mutual

Insurance Company, Inc., has not filed an answer or otherwise moved with respect to the

complaint herein.  The default of defendant is hereby noted pursuant to Rule 55(a) of the Federal

Rules of Civil Procedure.

Dated:   New York, New York
        January ___, 2008


                           J. MICHAEL MCMAHON_____
                           Clerk of Court


          By:  _____
                Deputy Clerk